IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONNIE SMITH,

        Plaintiff,

      v.

PROGRESSIVE FINANCIAL SERVICES, INC.,

        Defendant.

_____

Civ. No. 6:12-cv-1704-MC

OPINION AND ORDER

MCSHANE, Judge:

      Plaintiff brings this action seeking damages for alleged violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. Magistrate Judge Thomas M. Coffin filed a Findings and Recommendation (F & R) in response to defendant's motion for summary judgment and plaintiff's motion for partial summary judgment, and the matter is now before this court. *See* 28 U.S.C. § 636(b)(1)(B) (2012); Fed. R. Civ. P. 72(b). This court reviews all portions of the F & R subject to objection *de novo*. *McDonnel Douglas Corp. v. Commodore Bus. Machines Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Upon review, this court finds find no error in the F & R and ADOPTs it in full. Defendant's motion for summary judgment (#27) and plaintiff's motion for partial summary judgment (#32) are GRANTED IN PART and DENIED IN PART consistent with this opinion.

**STANDARD OF REVIEW**

1 – OPINION AND ORDER

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact is genuine "if the evidence is such that a reasonably jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air., Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995) (citing *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994)). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. (56)(c).

## DISCUSSION

Defendant contends that Judge Coffin erred in finding that (1) plaintiff's indebtedness qualified as a "debt" pursuant to the FDCPA, (2) defendant violated the FDCPA by contacting plaintiff before 8:00 a.m., and (3) plaintiff had standing, *i.e.*, that plaintiff's claim was not moot. Plaintiff contends that in regard to her TCPA claim, Judge Coffin erred in finding that plaintiff granted defendant express consent to contact her using an automated dialer.

## I. "Debt" under the FDCPA

Defendant contends that a loan made by Sallie Mae to plaintiff for the purpose of attending Falcon Aviation Academy is commercial and thus not subject to the FDCPA. Under the FDCPA, "debt" is defined as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

2 – OPINION AND ORDER

15 U.S.C. § 1692a(5) (2012). Based on this definition, the Ninth circuit has held that the FDCPA applies only to personal loans and not to commercial loans. *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992). When classifying a loan as personal or commercial, courts typically "examine the transaction as a whole," and pay particular attention to "the purposes for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature." *Id.* (quoting *Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir. 1980)); *see also Riviere, et al. v. Banner Chevrolet, Inc.*, 184 F.3d 457, 462 (5th Cir. 1999) (stating in reference to the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, that the court must ". . . look to the substance of the transaction . . . rather than the form alone."). The relevant time period for determining the nature of a loan under the FDCPA is when the loan first arises, not when collection efforts begin.[1] *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC.*, 214 F.3d 872, 874 (7th Cir. 2000); *Flint v. Beneficial Fin. I Inc.*, No. 12-cv-01675-GEB-EFB, 2012 WL 3277109, at *3 (E.D. Cal. Aug. 9, 2012).

Plaintiff is a "consumer" because he is a "natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3) (2012). Plaintiff, as a "consumer," entered into a written agreement with Sallie Mae to borrow $15,810 to attend Falcon Aviation Academy. Plaintiff's obligation arose under written agreement in which educational "services" were the subject of the transaction. *See Carrigan v. Cent. Adjustment Bureau, Inc.*, 494 F.Supp. 824, 826 (N.D. Ga. 1980) (finding that "educational services" were the subject of a loan arising under a transaction to attend the University of Florida). In determining whether educational "services" constitute

---

[1] Subsequent use of the "money, property, insurance, or services" which are the subject of the transaction may be considered when evaluating the initial purpose of a consumer. *See Slenk v. Transworld Systems, Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) (finding that a genuine issue of material fact existed where Slenk used the backhoe to build his family home, never once used the backhoe for any other purpose, and sold the backhoe following completion of his home).

personal debt, the Ninth Circuit has acknowledged that few cases interpret the term "debt" under the FDCPA. *Bloom*, 972 F.2d at 1068. In response, the Ninth Circuit and "courts in other jurisdictions have looked for guidance to cases interpreting analogous provisions of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 to 1693r, such as the Truth in Lending Act (TILA)." *Id*; *see Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1168-69 (3d Cir. 1987).

In *Bloom*, the Court found that the *Thorns* TILA factors "simply reinforce[d]" their holding and "even if [the Court] were to apply the factors identified in *Thorns*, it would not alter [the Courts'] conclusion" that plaintiff's loan was commercial. *Id*. at 1069. The Court explicitly left open the "question of whether the standards governing what constitutes a consumer debt under the FDCPA may differ from those determining what constitutes a consumer loan under the TILA." *Bloom*, 972 F.2d at 1069 (footnote 2). As *Bloom* indicated, the *Thorns* factors "reinforced" its "debt" holding. This court will also turn to the *Thorns* factors for guidance.[2] *See Thompson v. Prof'l Foreclosure Corp.*, No. 98-CS-478, 2000 WL 34335866, at *4 (E.D. Wa. Sept. 25, 2005) (holding that because neither party presented facts relating to the *Thorns* factors regarding whether the TMS loan was FDCPA debt, there remains a genuine issue of material fact regarding the nature of the loan); *see also In re Reinke*, No. 09-19609, 2011 WL 5079561, at *13 (Bankr. W.D. Wa. Oct. 26, 2011).

Under *Thorns*, the factors to be considered in determining whether a loan is primarily for commercial as opposed to personal purposes are:

---

[2] TILA does not apply to "[l]oans made, insured, or guaranteed pursuant to a program authorized by Title IV of the Higher Education Act of 1965." 15 U.S.C. § 1603(7) (2012). Sallie Mae and its subsidiaries are considered such authorized programs since they were established by Congress in 1972 as Government Sponsored Enterprises through the High Education Act to serve as a national secondary market for student loans and were authorized to continue to engage in new business activities and acquire additional program assets up until July 1, 2009. 20 U.S.C. § 1087-2 (2012); *see Brumberger v. Sallie Mae Servicing Corp.*, No. Civ.A. 02-2909, 2003 WL 1733548, at *2 (E.D. La. Mar. 28, 2003). Importantly, the FDCPA has no similar statutory exclusion for student loan debt.

4 – OPINION AND ORDER

The relationship of the borrower's primary occupation to the acquisition. The more closely related, the more likely it is to be business purpose.

The degree to which the borrower will personally manage the acquisition. The more personal involvement there is, the more likely it is to be business purpose.

The ratio of income from the acquisition to the total income of the borrower. The higher the ratio, the more likely it is to be business purpose.

The size of the transaction. The larger the transaction, the more likely it is to be business purpose.

The borrower's statement of purpose for the loan.

*Thorns v. Sundance Properties*, 726 F.2d 1417, 1419 (9th Cir. 1984). In *Bloom*, the court highlighted that plaintiff was president of the company he invested in, he represented the venture in his capacity as an attorney, and he consequentially "personally managed important aspects of the investment." *Bloom*, 972 F.2d at 1069. In contrast, plaintiff invested her loan proceeds into educational services as a student. Plaintiff's "occupation" as a student did not accord her the degree of expertise and control exercised by Bloom as president and attorney.

Plaintiff's transaction "size" of $15,810 is actually larger than the $5,000 transaction in Bloom. However, the *Bloom* Court did not address the "ratio" or "size" factors in its reinforcement discussion. Thus, this seemingly commercial-leaning factor is given little weight.[3]

The purpose of the loan in *Bloom* was "for venture capital in an investment." *Id*. Unlike *Bloom*, plaintiff's purpose in obtaining her loan was to finance her education at Falcon Aviation Academy. Defendant argues that an educational loan is akin to venture capital. Venture capital is

---

[3] Importantly, in those TILA cases where "size" was a dispositive factor in the personal-commercial analysis, the sum was typically much higher than plaintiff's $15,810. *See, e.g.*, *Bergman v. Fidelity Nat. Financial, Inc.*, No. 2:12-cv-05994-ODW(MANx), 2012 WL 6013040, at *4 (C.D. Cal. Dec. 3, 2012) (finding that the "fourth factor falls between the parties, as the transaction size was $626,250."); *First Gibraltar Bank, FSB v. Smith*, No. 3:89-CV-1537-P, 1993 WL 797457, at *8 (N.D. Tex. Sept. 28, 1993) (finding that a $10 million loan was not consumer debt).

"money made available for investment in innovative enterprises or research, especially in high technology, in which both the risk of loss and the potential for profit may be considerable." The American Heritage Dictionary of the English Language 1909 (4th ed. 2000). Contrary to defendant's argument,[4] "education" encompasses something broader than mere investment in pursuit of profit. *Brown v. Bd. of Ed. Of Topeka, Shawnee Cnty, Kan.*, 347 U.S. 483, 493 (1954) (". . . our recognition of the importance of education to our democratic society . . . . It is the very foundation of good citizenship."); *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923) ("The American people have always regarded education and acquisition of knowledge as matters of supreme importance which should be diligently promoted."). Education, unlike venture capital, cannot be taken by creditors upon default and remains with the consumer throughout his or her life; any skill or knowledge acquired by plaintiff is hers and hers alone. In contrast, if plaintiff invested her loan in a business and then defaulted, defendant would be provided with ample opportunities to reach such an interest. These factors, when viewed "as a whole," indicate that plaintiff's educational services were primarily for personal purposes. Thus, plaintiff's student loan is "debt" subject to the FDCPA. *See, e.g.*, *Brumberger v. Sallie Mae Servicing Corp.*, No. Civ.A. 02-2909, 2003 WL 1733548, at *3 (E.D. La. Mar. 28, 2003); *Skerry v. Massachusetts Higher Educ. Assistance Corp.*, 73 F.Supp.2d 47, 51 (D. Mass. 1999); *Pelfrey v. Educ. Credit Mgmt. Corp.*, 71 F.Supp.2d 1161, 1166 (N.D. Al. 1999); *Carrigan*, 494 F.Supp. at 826.

## II. Defendant Liability under 15 U.S.C. § 1692c (FDCPA)

The FDCPA is a strict liability statute and thus does not require a showing of intentional conduct on the part of the debt collector. *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1004

---

[4] "Basically, the loan was venture investment in becoming an airline industry employee." Def.'s Partial Objection to Findings and Recommendation on Def.'s Mot. for Summ. J., July 9, 2012, ECF No. 46, at 4.

6 – OPINION AND ORDER

(9th Cir. 2008) (citing *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1176

(9th Cir. 2006)); 15 U.S.C. § 1692k(a) (2012) . A debt collector "shall assume that the

convenient time for communicating with a consumer is after 8 o'clock antermeridian." 15 U.S.C.

§ 1692c(a)(1) (2012). Plaintiff presented evidence that she received phone calls resulting in voice

mails before 8 a.m. "Communications" under the FDCPA include telephone calls resulting in

messages left on a consumer's answering machine. *Dona v. Midland Credit Mgmt., Inc.*, No. CV

10-0825(JS)(WDW), 2011 WL 941204, at *1 (E.D. N.Y.  Feb. 10, 2011); *Foti v. NCO Fin. Sys.*,

424 F.Supp.2d 643, 655-56 (S.D. N.Y. 2006); *Berg v. Merchs Ass'n Collection Div., Inc.*, 586

F.Supp.2d 1336, 1340-41 (S.D. Fla. 2008); *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F.Supp.2d

1104, 1115-16 (C.D. Cal. 2005). As the defendant failed to provide any evidence to rebut the

presumption of inconvenience to plaintiff, Judge Coffin's recommendation to grant plaintiff's

motion for summary judgment on this issue was correct.

### III. Mootness of Plaintiff's Claim

Article III of the Constitution limits the jurisdiction of federal courts to resolving live

cases or controversies between parties. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523,

1528 (2013) (quoting *Valley Forge Christian College v. Americans United for Separation of*

*Church and State, Inc.*, 454 U.S. 464, 471 (1982)). "The inability of the federal judiciary to

'review moot cases' derives from the requirement of Article III of the Constitution under which

the exercise of judicial power depends upon the existence of a case or controversy." *Defunis v.*

*Odegaard*, 416 U.S. 312, 316 (1974) (citing *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n. 3 (1964)).

Mootness has two aspects: "when the issues presented are no longer 'live' or the parties lack a

legally recognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388,

396 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

7 – OPINION AND ORDER

An offer for a plaintiff's maximum recovery may render an action moot even without compliance with Federal Rule of Civil Procedure 68. *Doyle v. Midland Credit Mgmt, Inc.*, No. 12-4555, 2013 WL 3242148, at *1 (2d Cir. June 28, 2013); *Simmons v. United Mortg. & Loan Inv.*, LLC, 634 F.3d 754, 764 (4th Cir. 2011); *see also Zinni v. ER Solutions, Inc.,* 692 F.3d 1162, 1168 (11th Cir. 2012) (holding that an offer for full relief includes an offer of judgment if sought). Defendant tendered an offer to plaintiff of $1,001 on August 9, 2012 prior to the filing of the complaint on September 20, 2012, and then subsequently through an Unopposed Motion to Deposit Funds (#6) on October 9, 2012. Defendant contends this tender offered the full relief requested by plaintiff. Despite this contention, defendant's tender excluded attorney fees and actual damages. As noted in the F & R, attorney fees are often incurred pre-filing for the drafting of a complaint, demand letter, legal research, etc. Likewise, plaintiff alleges actual damages and submitted an affidavit[5] asserting she suffered mental anguish, embarrassment and annoyance.[6] "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013). Thus, defendant's tender cannot be deemed an offer in complete satisfaction of plaintiff's claims at this stage in the proceeding because it didn't offer full relief.

## IV. Defendant Liability under 47 U.S.C. § 227 (TCPA)

The TCPA makes it unlawful to make automated calls to cell phones without prior consent except if for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii) (2012). Plaintiff

---

[5] A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data or by mere "undisclosed, subjective intentions." *Klopfenstein v. Pargeter*, 597 F.2d 150, 151-52 (9th Cir. 1979). However, plaintiff's affidavit is not merely conclusory, but provides sufficient factual data — "I suffered from embarrassment and mental anguish when I learned that my mother Denise Gordils had been informed by Defendant through a voicemail message that I owed a debt, and that she had been called repeatedly by Defendant." Aff. of Ronnie Smith, Apr. 30,  2013, ECF No. 36, at 1.

[6] The Ninth Circuit recognizes actual damages for mental anguish, humiliation, embarrassment, and emotional distress. *E.g.*, *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 957 (9th Cir. 2011).

8 – OPINION AND ORDER

contends that (1) she did not give express consent to Sallie Mae to contact her at the (772) xxx-xx46 number, but merely to contact her at the (772) xxx-xx73 number, and (2), she did not give express consent to defendant to contact her cell phone by automated call.

      First, plaintiff expressly consented to the use of automated telephone dialing equipment.[7] Plaintiff's express consent extended to the "loan application," to "other documents," or more generally, "in connection with this loan or loan application." Decl. of Mary Kay Mauer, Apr. 22, 2013, ECF No. 30, Ex. 103 at § XII(14). Plaintiff provided the (772) xxx-xx46 number pursuant to § XII(1) of the loan application on October 23, 2008 as a subsequent change in information.[8] Thus, plaintiff provided express consent to Sallie Mae to contact her at the (772) xxx-xx46 number either in the "loan application," "other document," or more generally, "in connection with this loan or loan application." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Request of ACA Int'l for Clarification and Declaratory Ruling*, 23 F.C.C.R. 559, 564-65 (2008) ("We emphasize that prior express consent is deemed to be granted only if . . . such number was provided during the transaction that resulted in the debt owed."); *see also Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (applying FCC declaratory ruling). Second, plaintiff's express consent extended to defendant "in connection with this loan or application," as a valid assignment under the loan application[9] and

---

[7] "14. Use of Automated dialing Equipment; Calls to Cellular Telephone; I consent to your use of automated telephone dialing equipment or an artificial or prerecorded voice message to contact me in connection with this loan or loan application. You may contact me any telephone number provided in the loan application or in other documents, even if any such number is a cellular telephone number." Decl. of Mary Kay Mauer, Apr. 22, 2013, ECF No. 30, Ex. 103 at § XII(14).

[8] "1. Change in Information- I will send written notice to you within ten days after any change in my name, address, telephone number or status, or within ten days after any change in the school enrollment status of the Student, which includes, but is not limited to, non-attendance." Decl. of Mary Kay Mauer, Apr. 22, 2013, ECF No. 30, Ex. 103 at § XII(1).

[9] The loan application contains an assignment clause. "7. Assignments, Estate Bound – [Ronne Smith] may not assign this Note or any of its benefits or obligations. You may assign this Note at any time. The obligations of this Note will be binding on my estate." Decl. of Mary Kay Mauer, Apr. 22, 2013, ECF No. 30, Ex. 103 at § XII(7).

9 – OPINION AND ORDER

explicitly under the terms of the application.[10] Accordingly, summary judgment is granted in favor of defendant on plaintiff's TCPA claim.

## **CONCLUSION**

For these reasons, Judge Coffin's F & R (#41) is ADOPTED. Defendant's motion for summary judgment (#27) should be GRANTED IN PART and DENIED IN PART. Plaintiff's motion for partial summary judgment (#32) should be GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

DATED this 1st day of August, 2013.

_____
Michael J. McShane
United States District Judge

---

[10] The loan application itself defines "you" and "your" as the "[l]ender, its agents, and any subsequent holder of this note, and the agents of such persons." Decl. of Mary Kay Mauer, Apr. 22, 2013, ECF No. 30, Ex. 103 at 1. If this definition is given its full effect, then plaintiff's express consent extends to "your", *i.e.*, lender, agents or any subsequent holder of this note, and would cover defendant.

10 – OPINION AND ORDER